**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

STANLEY SWENSON,                                    No. CIV S-08-1675-FCD-CMK

        Plaintiff,

    vs.                                    <u>FINDINGS AND RECOMMENDATIONS</u>

SISKIYOU COUNTY, et al.,

        Defendants.

_____/

        Plaintiff, who is proceeding pro se, brings this civil rights action.  Pending before the court is defendants' motion for summary judgment (Doc. 74) and plaintiff's opposition thereto (Doc. 109).  Also before the court are: (1) defendants' request for judicial notice (Doc. 74-1); (2) plaintiff's objections (Doc. 110) to defendants' separate statement of undisputed fact based on alleged perjury;[1] and (3) plaintiff's amended motion to strike (Doc. 111) the declarations filed in support of defendants' motion for summary judgment based on alleged perjury.

/ / /

---

[1]     This document appears to be plaintiff's separate statement of disputed fact in opposition to summary judgment, and will be considered as such.

1

# I. BACKGROUND

A.     __Plaintiff's Allegations__

Plaintiff names as defendants Siskiyou County, members of the Siskiyou County Planning Commission, members of the Siskiyou County Board of Supervisors, and others.  He states that he owns an interest in real property situated in Siskiyou County.  The property is located "directly behind a gravel pit owned and operated by the Defendant."  According to plaintiff, on August 3, 1966, the Siskiyou County Planning Commission issued a use permit "allowing for the installation and operation of an asphalt hot plant to manufacture aggregate and asphalt paving products."  He states that his predecessor-in-interest began making use of the property consistent with the use permit and that the use permit became a "vested property right which runs with the land."  He adds that the 1966 use permit does not contain any termination provision.

Plaintiff claims that, on December 10, 2002, "[c]ounsel for the Plaintiff gave written notice . . . to Rick Barnum as Director of the Siskiyou County Planning Department that the property owners were going to move forward with a business plan consistent with the Use Permit."  On February 13, 2003, the Planning Commission, through its director Wayne Virag, responded with a letter asserting that the use permit was no longer valid.  According to plaintiff, the "Planning Director's decision was made without any hearing, without legislative authority, and without any legislative body action all in violation of Plaintiff's due process rights relating to termination of a vested property right."  Following the decision, Siskiyou County filed an appeal which was heard on May 4, 2005.[2]  The Planning Commission rejected the appeal and affirmed its determination that the 1966 use permit was no longer valid.  Plaintiff alleges that the appeal was heard over his objection because the Planning Commission "lacked any authority to conduct the [May 4, 2005] hearing."  On May 24, 2005, plaintiff appealed to the Siskiyou County Board

---

[2]        Plaintiff does not state what happened between February 2003 and May 2005.

1   of Supervisors, which also affirmed the Planning Commission's determination regarding the use

2   permit.

3              Plaintiff alleges in Count 1 a civil rights claim based on the determination that the

4   1966 use permit was not valid:

5              In declaring the Use Permit to be invalid based on Siskiyou County
             Code § 10-6.2501, Siskiyou County by and through the Planning Director,
6             the Planning Commission, and the Board of Supervisors abused their
             discretion and failed to proceed in the manner required by law in that the
7             termination of the Use Permit deprived Plaintiff of a vested property right.

8   He adds:

9              Termination of the Use Permit constitutes a taking of property
             without just compensation in violation of Article I, Section 19 of the
10            California Constitution and the Fifth and Fourteenth Amendments of the
             United States Constitution. The termination violated Plaintiff's procedural
11            and substantive due process rights . . . .

12   Plaintiff contends that, as the result of the determination that the use permit was no longer valid,

13   he has been "denied the use of the Property consistent with the Use Permit from September of

14   2000 through the entry of a final order July 13, 2007. . . ."

15             In their request for judicial notice, defendants ask the court to judicially notice

16   various state court orders and Siskiyou County ordinances. Attached to their request is a July 20,

17   2007, final judgment in Siskiyou County Superior Court case no. SCCVSV-05-222 in which the

18   state court granted plaintiff's petition for a writ of mandate challenging the determination that the

19   1966 use permit was invalid. In the 2007 judgment, the state court ordered:

20            That a Writ of Mandate issue commanding Defendant . . . County
             of Siskiyou to refrain from denying Plaintiff's . . . right to exercise all
21            rights granted to his predecessor in interest . . . under that certain Use
             Permit issued August 3, 1966 . . . .

22

23   / / /

24   / / /

25   / / /

26   / / /

3

1    In Count 2, plaintiff references an action he brought asking the Superior Court to

2 declare the 1966 use permit valid with respect to his property.[3]  According to plaintiff, defendants

3 interposed demurrers based on failure to exhaust administrative remedies because they ". . . did

4 not want the case heard . . . because [they] knew that a hearing concerning a Vested Use Permit

5 would necessarily result in the protection of Plaintiff's property rights."[4]  Plaintiff states that he

6 was told by the Siskiyou County Counsel – defendant Frank DeMarco – that ". . . the county

7 would rather fight Plaintiff in court in hopes of winning instead of taking on the masses of Mt.

8 Shasta when they filed in court if Plaintiff was allowed to go forward."  Plaintiff adds:

9           . . .At that point Plaintiff asked Mr. DeMarco if that meant that the
           county would rather squash Plaintiff's property rights in court in hopes of
10          the court making a mistake in its final decision and finding against
           Plaintiff.  Mr. DeMarco said "I guess you could state it that way."

11

12 According to plaintiff, defendants conspired to thwart his state court case even though they knew

13 the use permit was valid.

14    Plaintiff  also asserts in Count 2 that his case "arises not only of the deprivation of

15 constitutional rights alleged in count 1, but also out of a civil action against plaintiff filed in 2001

16 by the Siskiyou County District Attorney's Office for damages resulting from plaintiff's sale of

17 dirt dug from the property."   He asserts that, through this lawsuit, the "principal parties

18 attempted to deprive Plaintiff of the vested right stated in Count 1 as a method of getting revenge

19

20        [3]    This is apparently a reference to his petition for a writ of mandate in Siskiyou
   County Superior Court case no. SCCVSV-05-222

21

22        [4]    According to documents attached to defendants' request for judicial notice, the
   state court ruled on three separate demurrers.  On May 25, 2005, the court sustained a demurrer
23 to plaintiff's original complaint on the grounds that plaintiff did not exhaust administrative
   remedies or join indispensable parties.  Plaintiff then filed a first amended complaint.  On
24 September 21, 2005, the court sustained a second demurrer on the grounds of uncertainty with
   respect to the first and second causes of action.  Plaintiff then filed a second amended complaint.
   On December 12, 2005, the court overruled a third demurrer, but granted a motion to strike the
25 second cause of action without leave to amend.  Defendants were directed to file an answer to the
   second amended complaint.  As indicated above, judgment was entered in plaintiff's favor on
26 July 20, 2007.

for his successful defense of the frivolous case."[5]  He adds that the 2001 civil action ". . . was filed instead of a citation for an infraction in an attempt to get a larger sum of money from Plaintiff."  Plaintiff does not allege that the action was improperly filed.[6]

Finally, plaintiff states allegations concerning his application in 2000 for a use permit and reclamation plan.  Plaintiff states that objections were raised because of safety concerns relating to a nearby railway underpass.  He states that he and county officials agreed to share the cost of a traffic study.  According to plaintiff, the traffic study concluded that the underpass was indeed too narrow and needed to be widened before plaintiff's project could go forward.  Plaintiff claims that the ". . . engineer made findings, not on the basis of his independent judgment, but on the basis of the undue and unlawful influence of the County and the individuals named in this count of the complaint."

**B.**    **Procedural History**

On November 21, 2008, the court issued findings and recommendations addressing defendants' motion to dismiss.  The court concluded that plaintiff did not state any cognizable federal claims and recommended dismissal of the action with prejudice.  Timely objections to the findings and recommendations were filed and, on March 3, 2009, the District Judge assigned to this case issued an order partially declining to adopt the findings and recommendations and denying the motion to dismiss.  The March 3, 2009, order began with the following:

> Upon review of the file, the court does not adopt the magistrate judge's findings and recommendations with respect to plaintiff's § 1983 claims based upon the alleged violations of his substantive due process rights and the Takings Clause.  The court adopts the magistrate judge's findings and recommendations in all other respects.

---

[5]    The court notes that it is not possible that the civil lawsuit was brought against plaintiff in order to retaliate against plaintiff for successfully defending against that lawsuit.  For this to be true, the plaintiff to the civil lawsuit would have been required to know the outcome of the case prior to bringing it.

[6]    It was eventually dismissed sometime in 2002.

1    As to the Takings Clause, the District Judge outlined the following applicable law:

2              The Takings Clause of the Fifth Amendment prohibits the
      government from taking "private property . . . for public use, without just
3     compensation." U.S. Const. amend. V. "Whether a particular restriction
      amounts to a taking depends largely upon the particular circumstances of
4     each case – that is, on essentially ad hoc, factual inquiries." Tahoe-Sierra
      Preservation Council, Inc. v. Tahoe Regional Planning Agency, 216 F.3d
5     764, 782 (9th Cir. 2000) (quoting Penn Central Transp. Co. v. City of
      N.Y., 438 U.S. 104, 124 (1978)). Courts have looked at three primary
6     factors in conducting the balance of public and private factors at stake:
      "(1) the economic impact of the regulation on the claimant; (2) the extent
7     to which the regulation has interfered with distinct investment-backed
      expectations; and (3) the character of the government action." Id.
8     Moreover, if the property owner seeks to press a claim based upon a denial
      of just compensation and a state provides an adequate procedure for
9     seeking just compensation, "the property owner cannot claim a violation of
      the Just Compensation Clause until [he] has used the procedure and been
10    denied just compensation." Williamson County Reg'l Planning Comm'n
      v. Hamilton Bank, 473 U.S. 172, 193 (1985).

11

12    As to due process, the District Judge outlined the following applicable law:

13             To state a claim for violation of the substantive due process clause,
      plaintiff must allege that "a state actor deprived [him] of a constitutionally
14    protected life, liberty, or property interest." Shanks v. Dressel, 540 F.3d
      1082, 1087 (9th Cir. 2008) (citing Action Apartment Ass'n, Inc. v. Santa
15    Monica Rent Control Bd., 509 F.3d 1020, 1026 (9th Cir. 2007)). Such a
      violation is not preempted by the Takings Clause where the land use action
16    challenged is "so arbitrary or irrational that it runs afoul of the Due
      Process Clause." Shanks, 540 F.3d at 1087 (quoting Lingle v. Chevron
17    U.S.A., Inc., 544 U.S. 528, 542 (2005)).

18    Applying these rules to the instant case, the District Judge concluded:

19             Plaintiff's complaint alleges that defendants violated his
      constitutional rights when the Siskiyou County Planning Director
20    informed him that a Use Permit relating to his property was no longer
      valid. (Compl., filed July 21, 2008, ¶ 13). The Siskiyou County Planning
21    Commission and the Siskiyou County Board of Supervisors upheld this
      position. (Id. ¶¶ 18, 21). Taking plaintiff's allegations as true and
22    drawing all reasonable inferences therefrom, plaintiff has sufficiently set
      forth a claim for violation of his constitutional rights. The court cannot
23    determine as a matter of law on a motion to dismiss the nature of the
      alleged taking or the nature of the government action. Nor can the court
24    determine, as a matter of law on the record before it, whether plaintiff
      unsuccessfully attempted to obtain just compensation through State
25    procedures. Therefore, defendants' motion to dismiss these claims on the
      bases relied upon by the magistrate judge is DENIED.

26

Finally, the District Judge noted in a footnote: "The court makes no findings with respect to other arguments raised in defendants' motion to dismiss but not relied upon by the magistrate judge."

Given that the court concluded in the November 21, 2008, findings and recommendations that plaintiff stated no cognizable federal claims, and in light of the District Judge's March 3, 2009, order adopting the findings and recommendations in all respects except as specifically discussed in the order, this action is now limited to plaintiff's § 1983 claims based on violation of the Takings Clause and/or violation of substantive due process. Defendants argue in their motion for summary judgment that the District Judge's order had the effect of dismissing all of Count 2 and that, as a result, this action only proceeds on Count 1 as against Siskiyou County and the Siskiyou County Planning Commission.

The court does not agree. It is clear from the complaint and the District Judge's order referencing allegations set forth in the complaint that Claim 1 consists of plaintiff's § 1983 claims (based on both the Takings Clause and due process) as against the municipal defendants. In Count 2 plaintiff "incorporates all other parts of the complaint to the extent that such incorporation is logical, fair, and just." Plaintiff also states: "This claim [Claim 2] arises not only out of the deprivations of constitutional rights alleged in Count 1, but also out of a previous civil case. . . ." In light of these allegations, the court concludes that plaintiff has incorporated his § 1983 claims alleged in Count 1 based on violation of the Takings Clause and/or due process into Count 2. In other words, Count 1 represents plaintiff's allegations of § 1983 violations as against the municipal defendants and Count 2 represents the same allegations as against the individual defendants.[7]

/ / /

---

[7] To the extent Count 2 purports to raise claims other than § 1983 claims based on violation of the Takings Clause and/or due process, the District Judge agreed with the Magistrate Judge that no other cognizable claims exist in Count 2. Specifically, the District Judge concluded that the complaint stated cognizable § 1983 claims and otherwise agreed with the Magistrate Judge's conclusion that Count 2 contained no other cognizable claims.

Based on the foregoing, the court concludes that this action proceeds as against all defendants on plaintiff's § 1983 claims, asserted in both Count 1 and Count 2, based on violation of the Takings Clause and/or due process.  No other claims remain.

## II.  THE PARTIES' EVIDENCE

### A.    Defendants' Evidence and Plaintiff's Objections

Defendants' motion for summary judgment is supported by deposition transcript excerpts, various items defendants' ask the court to judicially notice, and the declarations of the following individuals: (1) Jeff Fowle; (2) Marcia Armstrong; (3) Chris Lazaris; (4) Ron Stevens; (5) Jim Cook; (6) Lavada Erickson; (7) Mike McMahon; (8) Bill Hoy; (9) Wendy Winningham; (10) Brian McDermott; (11) Greg Plucker; (12) Frank DeMarco; (13) Scott Sumner; (14) Pete Knoll; (15) Larry Allen; (16) Don Langford; and (17) Rose Ann Herrick.  The motion is also supported by the declaration of defendants' counsel with attached exhibits.

In their request for judicial notice, defendants ask the court to take notice of various orders in plaintiff's prior state court action, Swenson v County of Siskiyou, et al., Siskiyou County Superior Court no. SCCVSV-05-222.  Defendants also ask the court to take judicial notice of various local Siskiyou County ordinances and public records.  The court may take judicial notice pursuant to Federal Rule of Evidence 201 of matters of public record.  See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008).  Thus, this court may take judicial notice of state court records, see Kasey v. Molybdenum Corp. of America, 336 F.2d 560, 563 (9th Cir. 1964), as well as its own records, see Chandler v. U.S., 378 F.2d 906, 909 (9th Cir. 1967).  The court may also take judicial notice of local ordinances and codes.  See Zimomra v. Alamo Rent-A-Car, 111 F.3d 1495 (10th Cir. 1997).  Defendants' request should be granted.

/ / /

/ / /

/ / /

1      According to defendants' evidence, a use permit was issued on August 3, 1966, to

2  C.O. Palmer regarding a 14.5-acre portion of real property then owned by Lucille Morgan and

3  later acquired by plaintiff and his wife in September 1994.  The Swensons subsequently

4  conveyed a 2/3s interest in 11.5 acres of the property, and retained a 100% interest in the

5  remaining 3 acres.  The use permit allowed for  the installation and operation of an asphalt hot

6  plant and the manufacture of aggregate and asphalt paving products, but does not allow surface

7  mining.[8]  In 2000, plaintiff and the County of Siskiyou agreed that the county would surface mine

8  the property in a joint reclamation effort involving a county-owned gravel pit adjacent to

9  plaintiff's property.  According to defendants, surface mining on plaintiff's property was required

10  in order to reclaim the county's gravel pit.  As part of this reclamation effort, the county removed

11  approximately 4,860 tons of rock from plaintiff's property, for which plaintiff was compensated

12  $4,860.00.  The removed rock was then crushed using a crusher located on the county's property.

13      In 1995, plaintiff participated in re-zoning his property, at his request, from

14  unclassified to light industrial.  In December 2002, plaintiff's attorney Darrin Mercier sent letters

15  to Siskiyou County Planning Director Rick Barnum advising that plaintiff was moving forward

16  with a business plan consistent with the use permit.  In a December 10, 2002, letter, counsel

17  stated: "If you have any factual or legal basis which suggest that operation under this Use Permit

18  would be unlawful, please advise your specific authority. . . ."  Barnum assigned the task of

19  responding to counsel's letter to Wayne Virag, who at the time was the Assistant Planning

20  Director.

21  / / /

22  / / /

23  / / /

24

25     [8]    Defendants state that, during the Swenson's ownership of the subject real property
it has not been surface mined except once briefly in January 1997 when plaintiff hauled out 1,000

26  yards of material during a flood.

1    Virag responded in a letter dated February 13, 2003.  In this letter, Virag

2 expressed his opinion that, because the use permitted by the use permit (i.e., installation and

3 operation of an asphalt hot plant and the manufacture of aggregate and asphalt paving products)

4 was not allowed in zones designated as light industrial, any operation permitted under the use

5 permit would be a  non-conforming use as of the date the property was re-zoned to light

6 industrial.  Thus, while the use was allowed when the property was unclassified, it was not

7 allowed after the property was re-zoned.  Virag also expressed his conclusion, based on his own

8 research, that a non-conforming use could be lost by abandonment of the use for a period of

9 greater than one year.  Virag stated in his letter that, because no use under the use permit had

10 been made for over a year, any use permitted under the use permit had been lost by

11 abandonment.[9]  According to Virag, no one told him what opinion to express in the February

12 2003 letter, which was entirely his own work.

13    On their own initiative, staff in the Planning Department initiated an

14 administrative appeal of Virag's opinion.  Following a public hearing on May 4, 2005, the

15 Planning Commission adopted Virag's February 2003 opinion.  The members of the Planning

16 Commission at the hearing were Jeff Fowle, Ron Stevens, Mike McMahon, and Chris Lazaris.

17 The Planning Commission's decision was appealed to the Siskiyou County Board of Supervisors,

18 which also adopted Virag's February 2003 opinion following a public hearing held on May 24,

19 2005.  LaVada Erickson, Marcia Armstrong, Bill Hoy, and Jim Cook were the members of the

20 County Board of Supervisors who heard the appeal.  In their declarations, Erickson, Armstrong,

21 Hoy, and Cook each state that they agreed with Virag's assessment regarding the validity of the

22 1966 use permit following the re-zoning.  Frank DeMarco, Siskiyou County Counsel, and Don

23 Langford, Assistant County Counsel, were present at both the May 4, 2005, and May 24, 2005,

24 public hearings.

25 _____

26    [9]    No conforming use had been made since before the Swensons acquired the property.

1    Following receipt of Virag's February 2003 letter but prior to completion of the

2   administrative appeal process, plaintiff instructed his counsel to file an action for declaratory

3   relief in state court.  Eventually, the state court allowed plaintiff's action to proceed in his claim

4   for administrative mandamus.  The claim for declaratory relief was stricken from the action.

5   Plaintiff prevailed on his administrative mandamus action and a writ of mandate issued

6   commanding the County of Siskiyou to refrain from denying plaintiff's right to exercise all use

7   granted to his predecessor in interest, C.O. Palmer, under the use permit.  Defendants conclude

8   that this judgment rendered Virag's February 2003 opinion a nullity.  Defendants state that, since

9   the state court judgment, plaintiff has never applied for re-zoning to a category that would permit

10  the use described in the use permit.  Nor has plaintiff ever applied for a variance.

11    Defendants also state that the denial of the various administrative appeals

12  discussed above was not influenced in any way by plaintiff's state court action against the county

13  or any other conduct of plaintiff.  In particular, defendants Erickson, Armstrong, Hoy, and Cook

14  each state that their only involvement with respect to the civil action was to authorize the city

15  attorney to defend the case.  After that, the defense strategy was completely left up to the

16  county's attorneys.  Likewise, defendants Fowle, Stevens, McMahon, and Lazaris each state in

17  their declarations that they agreed with Virag's assessment and were not influenced in any way

18  by plaintiff's civil action or any other conduct by plaintiff.

19    In January 2000, the County of Siskiyou submitted a reclamation plan, jointly

20  with plaintiff, for reclamation of the county's gravel pit located adjacent to plaintiff's property.

21  In August 2000, plaintiff applied for a permit to allow surface mining of his property.  Plaintiff

22  was informed by Virag by letter dated October 31, 2002, that his August 2000 application was

23  defective and that revisions were necessary.  Defendants state that plaintiff took no action to

24  correct the application.

25    Plaintiff moves to strike a number of defendants' declarations based on alleged

26  perjury.  Plaintiff states:

1          Plaintiff Stanley Swenson objects to the following declarations
2   based on perjury (Title 19 section 1621): LaVada Erickson, Bill Hoy,
    Marcia Armstrong, Jim Cook, Chris Lazaris, Ron Stevens, Jeff Fowle,
3   Mike McMahon, Brian McDermott, Pete Knoll, Larry Allen, Greg
    Plucker, Don Langford, and Scott Sumner.
4          It is unbelievable that 13 of the 17 declarations filed in the present
    action contain perjured statements.  All of the documentation used to show
5   that perjury was committed by the defendants is in the possession or
    readily available to Defendants' Attorney Phillip Price and Siskiyou
6   County Counsel Thomas Guarino.  The two attorneys are presumed to
    know the law and as such with the documents in their possession, they
7   caused their clients to perjure themselves.  They [sic] fact that two
    attorneys turned in false declarations or caused their clients to file false
8   declarations the two are guilty of subornation of perjury and should be
    punished per the law.
9          Yreka City Police Department, Lieutenant Gemache, has an active
    investigation.  The investigation stems from declarations signed by the
10  above named persons and turned in to U.S. Federal District Court in
    defense of civil action filed by Stanley Swenson, Plaintiff, in the present
11  case.  Lieutenant Gemache has spoken with Kirk Andrus, Siskiyou County
    District Attorney, about the alleged perjury.  Kirk Andrus has indicated,
12  after reviewing evidence, he will go forward with the prosecution upon
    completion of Yreka Police Department's investigation.

13   The court has reviewed plaintiff's specific objections to the declarations he lists, which are based

14   on perceived inconsistencies in defendants' declarations.  For example, plaintiff asserts that

15   Erickson's statement at paragraph 6 of her declaration that she reviewed various documents –

16   including documents relating to plaintiff's state court civil action – as part of her involvement in

17   the May 24, 2005, public hearing is contradicted by her later statement at paragraph 13 that her

18   decision had nothing to do with the civil action.  The court does not see any inconsistency.  In

19   particular, reviewing documents related to the civil case does not necessarily mean that her

20   decision was influenced by that case.  The court finds that plaintiff's other objections are

21   similarly flawed.

22       **B.**    **Plaintiff's Evidence**

23          In his separate statement of disputed facts (captioned as "Plaintiff's Objections to

24   Defendants' Separate Statement of Undisputed facts in Support of Defendants' Motion for

25   Summary Judgment"), plaintiff outlines a number of points of dispute with defendants' evidence.

26   For evidence in support of his statement of disputed facts, plaintiff cites to various exhibits to the

operative complaint in this case, excerpts from the transcripts of various depositions, and his own declaration in opposition to summary judgment.

A review of a few of plaintiff's points of disagreement, and the "evidence" purportedly in support thereof, suffices to demonstrate the nature of plaintiff's evidence.  For example, plaintiff disputes defendants' statement that surface mining was necessary to reclaim the county's adjacent property.  In "support" of his contention that this fact is disputed, plaintiff cites paragraph 1 of his own declaration in which he states: "Surface Mining Was not necessary to reclaim the County's Pit."  Other than his mere denial of defendants' evidence, plaintiff does not offer more on this point.  By way of further example, plaintiff next disputes defendants' statement of fact that no manufacture of aggregate or asphalt paving products occurred during Swenson's ownership of the subject property.  In "support" he offers paragraph 2 of his declaration in which plaintiff references the surface mining which occurred briefly as part of the county's reclamation effort.  He does not, however, offer any evidence to show that the surface mining constituted the "manufacture" of aggregate.  Next, plaintiff disputes Virag's statement that his February 13, 2003, opinion letter was based on his own research and conclusions and not guided by others.  In "support" plaintiff offers paragraph 3 of his declaration where he states that it is his understanding that Virag discussed "the project" with County Counsel and the Board of Supervisors.  Again, even if Virag did discuss "the project," this does not mean that Virag's February 13, 2003, opinion was guided by others and not his own independent opinion.

## III.  LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together

1     with the affidavits, if any," which it believes demonstrate the absence of a
2     genuine issue of material fact.

3     Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P.
      56(c)).

4
5     "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

      summary judgment motion may properly be made in reliance solely on the 'pleadings,
6
7     depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment

      should be entered, after adequate time for discovery and upon motion, against a party who fails to
8
9     make a showing sufficient to establish the existence of an element essential to that party's case,

10    and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of

11    proof concerning an essential element of the nonmoving party's case necessarily renders all other

12    facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as

13    whatever is before the district court demonstrates that the standard for entry of summary

      judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.
14
15             If the moving party meets its initial responsibility, the burden then shifts to the

16    opposing party to establish that a genuine issue as to any material fact actually does exist. See

17    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

      establish the existence of this factual dispute, the opposing party may not rely upon the
18
19    allegations or denials of its pleadings but is required to tender evidence of specific facts in the

20    form of affidavits, and/or admissible discovery material, in support of its contention that the

21    dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

22    must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

23    of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

      T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and
24
25    that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

26    for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).


**IV.  DISCUSSION**

**A.**   **Due Process**

After noting the portion of the District Judge's March 3, 2009, order discussing due process, defendants argue:

> It is important to determine the nature of the action complained of.
> As we pointed out above, plaintiff alleges in support of his substantive due
> process claim that he had a Use Permit (¶ 9) issued in 1966 (Exhibit 2 to

the Complaint).  That he gave notice on December 10, 2002, by letter from his attorney, to the Siskiyou County Planning Department that he intended to exercise his rights under the Use Permit (¶ 13 and Exhibit 3 to the Complaint).  But the letter does more than that.  The letter (Exhibit 3 to the Complaint) asks whether the Planning Department has any "factual or legal basis which suggest that operation under this Use Permit would be unlawful."  The letter clearly is asking for the opinion of the Planning Department as to whether use could legally be made under the 1966 Use Permit.  He then pleads that he received a latter from the Planning Director dated February 13, 2003 (Exhibit 4 to the Complaint), wherein the Planning Director (in response to the letters from plaintiff's attorney (Exhibit 3)) rendered the opinion that the property had been re-zoned so that the use became a non-conforming use and the right to make such use had been abandoned by non-use and could no longer be made on the property.  While he alleges that it was the Planning Director that rendered this opinion, as Exhibit 4 shows, it is undisputed that it was Assistant Planning Director, Wayne Virag, that rendered the opinion contained in Exhibit 4.  He then alleges that the Planning Commission, after a hearing, upheld the opinion of the Assistant Planning Director.  Thereafter, the Board of Supervisors, on appeal from the Planning Commission, denied the appeal thereby also upholding the opinion of the Assistant Planning Director contained in Exhibit 4 to the Complaint.

   Plaintiff does not plead that there was ever any enforcement action taken against him by Siskiyou County to prevent him from making such use of his property.

   The undisputed facts are consistent with his pleading, that is, plaintiff asked for an opinion on whether the old 1966 Use Permit would permit him to use his property consistent with the Use Permit.  He did not try to use it.  No enforcement action was taken against him to prevent his use of it (in which the correctness or incorrectness of the Assistant Planner's opinion could be presented to a court for resolution).  The undisputed facts are that there was never enforcement action taken against him by Siskiyou County to prevent him from making such use of his property.  He just got an opinion he asked for.

   The undisputed facts are that Wayne Virag's opinion letter (Exhibit 4 to the Complaint) did not deny the use of the property to install and operate an asphalt hot plant to manufacture aggregate and asphalt paving products.  It just indicated that the 1966 Use Permit could no longer be relied on to make such use.  Plaintiff never sought a re-zoning or variance or any other procedure to obtain the right to make such use on the property.  Defendant has never ruled on whether he could, in fact, make such use of the property.

Defendants continue their due process argument as follows:

   Now that we have seen that there was a legal and factual basis for Wayne Virag's opinion that abandonment had, in fact, occurred, by operation of law, as a result of the actions of plaintiff and/or his predecessors, and that no enforcement or other action had been taken to prevent plaintiff's use of the property pursuant to the Use Permit, we just

consider the rest of the undisputed facts surrounding that opinion and then related it to the law of substantive due process.  It is undisputed that Wayne Virag's opinion (Exhibit 4 to the Complaint) was his own work, without anyone directing him as to what conclusion he should reach.  It wasn't done as part of an agreement with anyone.  It was simply Wayne Virag's honest and good faith opinion.  Whether he was right or wrong, is not the issue for a constitutional violation.  See Shanks v. Dressel, 540 F.3d 1082, 1087 (9th Cir. 2008), where the court states that official decisions that rest on an erroneous legal interpretation are not necessarily constitutionally arbitrary.  Every State law violation does not invariably give rise to a substantive due process claim.  Such would be inconsistent with the principle that substantive due process is not a "font of tort law" that superintends all official decision making (Shanks, supra, 1089).  See also Licari v. Ferruzzi, 22 F.3d 344, 349-50 (1st Cir. 1994).  The court noted that in the area of development projects and permits refusals do not ordinarily implicate substantive due process.  A regulatory board does not transgress constitutional due process requirements merely by making decisions on erroneous reasons.  The decision must have been truly horrendous which is a high threshold.  (Licari, supra, at 350).  Since there is a rational legal basis for Wayne Virag's opinion and no involvement of others in that decision, it cannot be said to have been constitutionally arbitrary (Licari, supra, at 350).

Defendants also cite Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1026 (9th Cir. 2007) (requiring act to be arbitrary), and Nebbia v. New York, 291 U.S. 502, 538-39 (1934) (requiring arbitrary act, discriminatory act, or act without reasonable relationship to legislative policy), in support of the foregoing argument.  Defendants continue as follows:

There is another requirement that must be considered, that is, whether the provision under which the action is taken served some legitimate government purpose.  N. Pacifica LLC v. City of Pacifica, 526 F.3d 478, 484 (9th Cir. 2008).  Here the regulation under which Wayne Virag rendered his opinion is one relating to abandonment of non-confirming uses.  In view of the case law upholding the constitutionality of such provisions, it can hardly be argued that it does not serve a legitimate governmental purpose.  See La Mesa v. Tweed & Gambrell Planning Mill, 146 Cal.App.2d 762, 768-69 (1956), and Hill v. Manhattan Beach, 6 Cal.3d 279, 285-86 (1971).  In La Mesa, supra, 769, [the court] notes, with approval, that there is a growing tendency to guard against the indefinite continuance of non-confirming uses.  See also County of San Diego v. McClurken, 37 Cal.2d 683, 686-87 (1951).

* * *

Finally, we have County of Sacramento v. Lewis, 523 U.S. 833 (1998).  In Lewis, supra, at 846, the Supreme Court explains, in its general

17

discussion of substantive due process, that substantive due process limits what a government may do in both its legislative and its executive capacities, but what is fatally arbitrary differs depending on whether it is legislation or a specific act of a governmental officer that is at issue. The court then goes on to state: "Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.' . . ." Lewis, supra, at 846. The Court then states: "To this end, for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience." Lewis, supra, at 846. The Court made it clear that the due process clause does not guarantee that government officials act with due care (citation omitted). It is not a tort concept. The action must be arbitrary and that means it must be egregious official conduct which shocks the conscience.

In summary, Wayne Virag's opinion (Exhibit 4 to the Complaint), whether correct or not, was not constitutionally arbitrary and does not support plaintiff's substantive due process claim.

The essence of defendants' argument is that: (1) plaintiff's claim arises from Virag's opinion letter; (2) the letter was based on Virag's own opinion and not influenced by unrelated factors; and (3) even if Virag's opinion was incorrect, it was based on his research and belief as to the law and, as such, was not arbitrary. Because Virag's conduct (i.e., expressing a legal opinion which may have been incorrect) was not egregious, defendants conclude that no due process violation could have occurred and, for this reason, plaintiff's claim must fail.

In Shanks, the Ninth Circuit addressed a claim that city employees violated due process in the context of building permits. See 540 F.3d at 1087. The court recited the following factual summary:

Logan Neighborhood complains that Spokane and its employees failed to enforce the Spokane Municipal Code and take action "sufficient . . . to protect the Mission Avenue Historic District." (footnote omitted). Spokane's alleged failure to "discharge its mandatory duties" under the Spokane Municipal Code was, Logan Neighborhood asserts, "arbitrary, capricious, . . . and not in accordance with . . . [the] procedure required by law." By issuing a building permit to the Dressels without first requiring that they obtain a certificate of appropriateness and an administrative special permit, Spokane allegedly deprived Logan Neighborhood of constitutionally protected property interests.

Id. at 1088 (quoting Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 545 (2005)).

In addressing the due process claim, the court noted that "[t]he Supreme Court has 'long

eschewed . . . heightened [means-ends] scrutiny when addressing substantive due process challenges to government regulation" that does not impinge on fundamental rights."  Id.  Thus, the court stated, the "irreducible minimum" of a substantive due process claim challenging land use action is the failure to advance any legitimate governmental purpose.  See id. (citing North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 484 (9th Cir. 2008)).

The burden on the plaintiff to show that a government employee acted in a constitutionally arbitrary manner is "exceedingly high."  See Shanks, 540 F.3d at 1088 (citing Matsuda v. City & County of Honolulu, 512 F.3d 1148 (9th Cir. 2008)).  The court continued by explaining: "When executive action like a discrete permitting decision is at issue, only 'egregious official conduct can be said to be "arbitrary in the constitutional sense."': it must amount to an 'abuse of power' lacking any 'reasonable justification in the service of a legitimate governmental objective.'"  Shanks, 540 F.3d at 1088 (quoting County of Sacramento v. Lewis, 523 U.S. 833 (1998), and City of Cuyahoga Falls v. Buckeye Cmty. Hope Found., 538 U.S. 188 (2003)).  The court also noted that "[o]fficial decisions that rest on an erroneous legal interpretation are not necessarily constitutionally arbitrary."  Shanks, 540 F.3d at 1089.  On the facts of the case before it in Shanks, the court stated that "a routine, even if perhaps unwise or legally erroneous, executive decision to grant a third-party a building permit [] falls short of being constitutionally arbitrary."  Id.  The court did note that evidence of malice, bias, or pretext could change this result.  See id.

Based on the allegations in the complaint, the court agrees with defendants that the conduct giving rise to plaintiff's § 1983 claims is Virag's February 13, 2001, opinion letter and subsequent ratification of that opinion by the Planning Commission and Board of Supervisors.  Specifically, plaintiff claims:

> In declaring the Use Permit to be invalid based on Siskiyou County Code § 10-6.2501, Siskiyou County by and through the Planning Director, the Planning Commission, and the Board of Supervisors abused their discretion and failed to proceed in the manner required by law in that the termination of the Use Permit deprived Plaintiff of a vested property right.

1   This reading of the complaint is consistent with the District Judge's March 3, 2009, order in

2   which he stated:

> Plaintiff's complaint alleges that defendants violated his
> constitutional rights when the Siskiyou County Planning Director
> informed him that a Use Permit relating to his property was no longer
> valid.  (Compl., filed July 21, 2008, ¶ 13).  The Siskiyou County Planning
> Commission and the Siskiyou County Board of Supervisors upheld this
> position.  (Id. ¶¶ 18, 21).  Taking plaintiff's allegations as true and
> drawing all reasonable inferences therefrom, plaintiff has sufficiently set
> forth a claim for violation of his constitutional rights.

8           Based on the cases cited above, the question for the court is whether the conduct

9   of Virag (i.e., expressing his opinion regarding the 1966 use permit), which was adopted by the

10  Planning Commission and Board of Supervisors, was arbitrary.  In answering this question, it

11  matters not that Virag's opinion was legally incorrect.  Given the evidence submitted by

12  defendants showing that Virag's opinion was based on his own research and knowledge, the

13  court cannot say that merely expressing the opinion was arbitrary.  In fact, it was Virag's job to

14  express such opinions and plaintiff's attorney had requested the opinion in the first place.  Thus,

15  Virag was accomplishing legitimate governmental interests in expressing an opinion on the

16  validity of the use permit from a planning perspective, as well as responding to a request from an

17  interested member of the public.  Further, as defendants note, the opinion itself advanced the

18  legitimate governmental interest of avoiding non-conforming uses.

19          Getting to the heart of plaintiff's claim, plaintiff alleges that Virag's conduct,

20  subsequently ratified by the Planning Commission and Board of Supervisors, was based not on

21  his good faith opinion but, rather, on his animosity and bias towards plaintiff arising from

22  plaintiff's exercise of his right to seek redress in the courts.  Defendants have submitted evidence

23  showing that they acted in good faith in an effort to advance legitimate governmental interests.

24  Specifically, each of the involved defendants has declared under penalty of perjury that they were

25  not influenced in their official conduct by any of plaintiff's conduct or any preconceptions about

26  plaintiff or his business.  The court finds that defendants have met their initial burden of

20

1   establishing their entitlement to summary judgment on this claim by demonstrating that plaintiff

2   cannot establish any bias, malice, or pretext which would render defendants' conduct arbitrary.

3   　　　　In attempting to defeat summary judgment, plaintiff has submitted what the court

4   finds to be, at best, "flimsy" evidence.  As to the relevant declarations, plaintiff's "evidence"

5   consists of his own declaration in which he simply denies the truthfulness of defendants'

6   declarations.  Plaintiff does not, however, present independent evidence which would create a

7   genuine dispute as to the defendants' intentions and/or motivations.  Given that plaintiff's burden

8   of proof on this claim is "exceedingly high" requiring plaintiff to show that defendants' conduct

9   was egregious and amounted to an abuse of power, the court finds that plaintiff cannot meet this

10  burden on the evidence before the court.  Defendants are entitled to summary judgment on

11  plaintiff's substantive due process claim.

12  　　　　**B.** 　　**Takings Clause**

13  　　　　As with their discussion of due process, defendants begin their analysis of

14  plaintiff's Takings Clause claim with the District Judge's March 3, 2009, order.  Specifically,

15  defendants note that the District Judge observed that, on the face of the complaint alone, the

16  court could not determine the nature of the taking.  Defendants primarily argue that the conduct

17  complained of by plaintiff (the conduct of Wayne Virag in rendering the opinion letter about the

18  1966 use permit and subsequent ratification of that opinion by the Planning Commission and

19  Board of Supervisors) was not a "taking."  In particular, defendants argue:

20  　　　　　　Another important thing to note about the character of Wayne
     　　　　　　Virag's opinion . . . is that it was not a denial of the use of the property for
21  　　　　　　an asphalt hot plant and to manufacture aggregate and asphalt paving
     　　　　　　products.  It merely indicated that the 1966 Use Permit could not be used
22  　　　　　　to permit such use.

23  Defendants note in this regard that plaintiff never sought re-zoning or a variance to allow uses

24  Virag opined were not permitted under the 1966 use permit.  Thus, they conclude, Virag's action

25  in rendering the February 13, 2003, opinion regarding the use permit was not a taking because

26  nothing in that letter necessarily foreclosed the uses to which plaintiff desired to put the land.

1    Rather, the letter merely stated that such uses were not permitted under the use permit.

2           Defendants also argue that any Takings Clause claim is necessarily foreclosed

3    because he sought and obtained administrative and judicial review.  In particular, defendants

4    contend that plaintiff has not suffered any constitutional deprivation relating to the use of his

5    property because he obtained a final determination – a writ of mandate issued by the state court –

6    in his favor.  Finally, defendants argue that any deprivation of plaintiff's right to use the property

7    under the terms of the 1966 use permit between the date of Virag's opinion letter and the date the

8    state court issued the writ of mandate was merely temporary and not a "taking."  Defendants note

9    that, after issuance of the writ of mandate by the state court, plaintiff in fact now enjoys full use

10   of his property under the terms of the use permit.

11          Defendants' first argument is particularly persuasive.  In <u>Williamson County</u>

12   <u>Reg'l Planning Comm'n v. Hamilton Bank</u>, the Supreme Court held that the plaintiff's Fifth

13   Amendment "taking" claim failed because the plaintiff had not attempted to obtain a variance to

14   permit the use that was sought.  <u>See</u> 473 U.S. 172 (1985).  Thus, the Court concluded, there was

15   no final decision and the claim was not ripe.  <u>See id.</u> at 185-93.  Here, as defendants correctly

16   note, the evidence clearly shows that plaintiff never sought to obtain a variance or to have the

17   property re-zoned.

18          The court agrees with defendants that there was no "taking" in the sense that a

19   final decision was never rendered which absolutely foreclosed the uses plaintiff sought.  As

20   defendants state:

21                  Limiting plaintiff from one use [under the 1966 use permit]
             without effecting all the other uses available under the current zoning is
22           not a taking under the Fifth Amendment, particularly when the limit was
             self-imposed [by plaintiff's request to re-zone the land to light industrial]
23           and no attempt has been made to re-zone or obtain a variance.

24   On this basis alone, defendants are entitled to summary judgment on this claim.  <u>See Lingle</u>, 544

25   U.S. at 537 (recognizing regulatory taking only where there is a complete deprivation of "all

26   economically beneficial use" of the property); <u>see also Baytree of Inverrary Realty Partners v.</u>

                                                    22

1  Lauderhill, 873 F.2d 1407, 1410 (11th Cir. 1989) (holding that a re-zoning which prevented the

2  plaintiff's planned development of his property was not a taking where other development was

3  permitted).

4          Analyzing plaintiff's claim under the Just Compensation Clause of the Fifth

5  Amendment, defendant argue:

6              . . . [T]he Fifth Amendment does not prohibit the taking of
           property, it prohibits the taking of property without just compensation.
7          Compensation does not have to be paid prior to the "taking" (Williamson,
           supra, 194).  The court then stated: ". . . if a State provides an adequate
8          procedure for seeking just compensation, the property owner cannot claim
           a violation of the Just Compensation Clause until it has used the procedure
9          and been denied just compensation." (Williamson, supra, 195). . . .

10  In California, Article I, Section 19 of the state constitution sets forth procedures for obtaining just

11  compensation – specifically, an action for inverse condemnation.  See Taper v. City of Long

12  Beach, 129 Cal. App. 3d 590, 604 (1982); Yee v. City of Sausalito, 141 Cal. App. 3d 917, 920-

13  23 (1983); McMahan's of Santa Monica v. City of Santa Monica, 146 Cal. App. 3d 683, 690-91

14  (1983).  Defendants conclude that plaintiff cannot prevail under the Just Compensation Clause

15  because the evidence shows that plaintiff never sought and was denied just compensation by

16  way of inverse condemnation.[10]  The court agrees.

17

18                          **V.  CONCLUSION**

19          Based on the foregoing, the undersigned recommends that:

20          1.      Defendants' request for judicial notice (Doc. 74-1) be granted;

21          2.      Plaintiff's motion to strike (Doc. 111) be denied; and

22          3.      Defendants' motion for summary judgment (Doc. 74) be granted.

23          These findings and recommendations are submitted to the United States District

24

25  _____
       [10]     The District Judge touched on this issue in his March 3, 2009, order by stating:
       "Nor can the court determine, as a matter of law on the record before it, whether plaintiff
       unsuccessfully attempted to obtain just compensation through State procedures."  On summary

26  judgment, the record is now clear.

1   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

2   after being served with these findings and recommendations, any party may file written

3   objections with the court.  Responses to objections shall be filed within 14 days after service of

4   objections.  Failure to file objections within the specified time may waive the right to appeal.

5   See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6

7    DATED:  March 4, 2011

8

9                                                    CRAIG M. KELLISON
                                                     UNITED STATES MAGISTRATE JUDGE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26