UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

STANLEY SWENSON,

           Plaintiff,

      v.

SISKIYOU COUNTY, et al.,

           Defendants.

No. 2:08-CV-1675 KJM CMK

ORDER

        This case was on calendar on August 7, 2014 for a hearing on defendants' motion for summary judgment. Therese Cannata and Joshua Garber appeared for plaintiff; Philip Price appeared for defendants. After considering the parties' arguments, the court DENIES the motion as explained below.

I.  BACKGROUND

        On July 21, 2008, plaintiff Stanley Swenson, then appearing in propria persona, filed a civil rights action alleging generally that Siskiyou County, the Siskiyou County Planning Commission, and a number of individual defendants violated his rights in connection with a use permit for his property and subsequent enforcement actions against him. ECF No. 1. The first claim alleged that Siskiyou County and the Siskiyou County Planning Commission violated his procedural and substantive due process rights and deprived him of property without just compensation. The second claim alleged the individual defendants conspired to deprive plaintiff

1

1    of the rights listed in the first claim, but also retaliated against him for his successful defense of a

2    prior lawsuit brought by county officials against him.  *Id.*  Under Local Rule 302(c)(21), the case

3    was referred to the magistrate judge.

4             On August 20, 2008, defendants filed a motion to dismiss, arguing the following

5    points, among others:  (1) the federal claims are barred by the statute of limitations; (2) plaintiff's

6    claims arising in 2000 and 2001 are barred by the statute of limitations; (3) defendants Knoll, the

7    District Attorney, and Allen, an Assistant District Attorney, are immune from suit; (4) the County

8    and the Planning Commission cannot be held responsible under the doctrine of respondeat

9    superior; (5) the complaint does not state a claim against defendants Lazaris and McMahon, who

10   are named in the caption but not in the body of the complaint; (6) the complaint does not state a

11   claim under 42 U.S.C. § 1985; (7) the conspiracy is not adequately pleaded; (8) the action is

12   barred by claim and issue preclusion; (9) plaintiff has not exhausted administrative remedies;

13   (10) plaintiff has not adequately pleaded the County's liability under *Monell v. New York*

14   *Department of Social Services*, 436 U.S. 658 (1978); (11) the use permit did not give plaintiff any

15   vested rights; (12) the prior owner's use of the property did not give plaintiff the right to make

16   that use in light of plaintiff's failure to do so for many years; (13) the Planning Director did not

17   revoke or terminate plaintiff's use permit; (14) a zoning change rendered the use allowed by the

18   permit a non-conforming use; (15) Siskiyou County Ordinance § 10-6.2501 is constitutional;

19   (16) plaintiff has not adequately pleaded a violation of his constitutional rights; and (17) the

20   individual defendants are protected by quasi-judicial immunity.  Mot. to Dismiss, ECF No. 4.

21            On November 21, 2008, the magistrate judge issued findings and

22   recommendations.  First he characterized the complaint:  "plaintiff's Count 1 asserts violations of

23   his due process rights from the Planning Commission's 2003 decision that the 1966 use permit

24   was no longer valid[,] and defendants' alleged conduct relating to plaintiff's court action that

25   followed."  Findings and Recommendations, ECF No. 27 (F&Rs) at 5.  He said the second claim

26   was less clear, but appeared to arise from the defendants' conduct during the course of plaintiff's

27   state court action, the initiation of a 2001 action against him, and a 2000 denial of his application

28   for a use permit.  *Id.*  The magistrate judge then recommended the first claim be dismissed

1    because the existence of state remedies meant plaintiff could not state a due process claim against

2    the defendants.  *Id*. at 6.  He also said he could not "discern any constitutional violation" in count

3    two nor find plaintiff's Takings Clause claim adequately pleaded.  *Id*. at 6-7.

4          On March 3, 2009, the then-assigned district judge adopted the findings and

5    recommendations as to plaintiff's procedural due process claim, but declined to adopt them with

6    respect to the substantive due process and Takings Clause claims.  Order, ECF No. 32.

7    Regarding the substantive due process claim, the court said plaintiff had adequately stated a

8    violation of substantive due process by alleging the Siskiyou County Planning Director informed

9    him the use permit was no longer valid, a decision upheld by the Planning Commission and the

10   Board of Supervisors.  *Id*. at 4.  The court noted it made no findings as to the other bases for the

11   motion to dismiss not relied upon by the magistrate judge.  *Id*. at 5 n.1.

12         On July 9, 2010, defendants filed a motion for summary judgment, arguing the

13   following points:  (1) both of plaintiff's claims are barred by the statute of limitations;

14   (2) plaintiff does not have a property interest giving rise to a substantive due process claim

15   because the defendants did not prevent plaintiff from using his property in conformity with the

16   permit; the permit does not give rise to any vested property interest; the prior owner's use in

17   conformance with the permit did not create a vested interest in so using the property; the permit

18   was neither revoked nor terminated; the use became non-conforming after the zoning change

19   plaintiff requested; (3) the letter from Wayne Virag about the use permit did not violate plaintiff's

20   rights because it was Virag's honest opinion; (3) plaintiff cannot establish his Takings Clause

21   claim for a variety of reasons; (4) all of plaintiff's claims are barred by issue preclusion; (5) the

22   individual defendants are entitled to immunity; (5) plaintiff cannot establish his claim under

23   42 U.S.C. § 1985; (6) plaintiff failed to exhaust administrative remedies; and (7) plaintiff cannot

24   establish the County's liability.  Mot. for Summ. J., ECF No. 74.

25         On March 7, 2011, the magistrate judge recommended that defendants' motion for

26   summary judgment be granted as to the substantive due process and Takings Clause claims

27   remaining after the court's resolution of the motion to dismiss.  F&Rs, ECF No. 117.  The court

28   characterized plaintiff's due process claim as arising from Wayne Virag's letter of February 13,

1    2003, about the continued viability of the use permit and its subsequent ratification by the

2    Planning Commission and Board of Supervisors, and determined that Virag's opinion was not

3    arbitrary. *Id*. at 19-20.  He also recommended plaintiff's Takings Clause claim be denied. *Id*. at

4    21-22.

5             On June 15, 2011, the district court adopted these findings and recommendations

6    and granted defendants' motion for summary judgment.  Order, ECF No. 130.

7             Plaintiff filed a timely notice of appeal on July 11, 2011.  Notice of Appeal, ECF

8    No. 134.  In his opening brief, he argued the district court had erred in dismissing both his

9    procedural and substantive due process claims and also argued the court improperly dismissed an

10   equal protection claim stemming from defendants' alleged differing treatment of other property

11   holders.  Appellate Docket, No. 11-16678, ECF No. 6 at 17-18.

12            In their answering brief, defendants argued among other things that plaintiff was

13   accorded procedural due process by the hearing before the Planning Commission, the appeal to

14   the Board of Supervisors, and the ultimate successful review by administrative mandamus.  They

15   also argued Virag's letter was only an opinion and was neither arbitrary nor irrational and there

16   was no enforcement action taken in conformance with it.  Appellate Docket, ECF No. 7 at 26-27.

17   They also argued all of plaintiff's claims were barred by the statute of limitations.  *Id*. at 60-63.

18            On November 20, 2012, the Court of Appeals affirmed in part and reversed in part

19   the district court's orders.  It declined to consider plaintiff's equal protection claim because it was

20   raised for the first time on appeal; it affirmed the dismissal of plaintiff's § 1985 claim and the

21   grant of summary judgment on the Takings Clause claim.  It reversed, however, on the procedural

22   due process claim because plaintiff had not alleged a random deprivation, which could be

23   addressed through post-deprivation remedies, but rather said defendants had deprived him of a

24   vested property interest under established state law procedures, which required them to make a

25   pre-deprivation procedure available.  It also reversed the grant of summary judgment on the

26   substantive due process claim because plaintiff had "raised a genuine dispute of material fact as to

27   whether defendants acted in an arbitrary and irrational manner when they invalidated a vested

28   /////

4

1  property interest due to political or other considerations."  District Court Docket, Order, ECF

2  No. 139.  The mandate issued on April 15, 2013.  ECF No. 139.

3           On June 18, 2013, counsel appeared for plaintiff and the magistrate judge referred

4  the case to the district court.  Notice of Appearance, Order, ECF Nos. 144-147, 149.

5           Thereafter the then-assigned district judge issued a new scheduling order, allowing

6  the parties to file dispositive motions on issues not previously addressed by the district court or

7  the Ninth Circuit.  Order, ECF No. 154.

8           On February 3, 2014, the parties stipulated to the dismissal of defendants Larry

9  Allen, Pete Knoll, Brian McDermott, and Don Langford.  ECF No. 169.

10          Defendants filed the instant motion for summary judgment on March 14, 2014.

11  Mot. for Summ. J., ECF No. 174.  On April 9, 2014, plaintiff filed his opposition, as well as a

12  request for judicial notice, evidentiary materials, and a response to defendants' statement of

13  undisputed facts.  Opp'n, Request for Judicial Notice, ECF Nos. 178-181.  On April 15, 2014,

14  defendants filed a reply and objected to plaintiff's response to defendants' statement of

15  undisputed facts.  Reply, ECF No. 182.

16          At hearing on the motion, plaintiff confirmed that any claims related to the

17  defendants' actions in connection with the 2001 action against plaintiff are not part of the suit, but

18  do provide background to the instant claims.

19  II.  STANDARDS FOR SUMMARY JUDGMENT

20          A court will grant summary judgment "if . . . there is no genuine dispute as to any

21  material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

22  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

23  resolved only by a finder of fact because they may reasonably be resolved in favor of either

24  party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1]

25  /////

26  _____

27    [1] Rule 56 was amended, effective December 1, 2010.  However, it is appropriate to rely on
cases decided before the amendment took effect, as "[t]he standard for granting summary
judgment remains unchanged."  Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010

28  amendments.

1    The moving party bears the initial burden of showing the district court "that there

2    is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*,

3    477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish

4    that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio

5    Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular

6    parts of materials in the record . . .; or show [] that the materials cited do not establish the absence

7    or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

8    support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the

9    nonmoving party] must do more than simply show that there is some metaphysical doubt as to the

10   material facts"). Moreover, "the requirement is that there be no genuine issue of material fact . . .

11   . Only disputes over facts that might affect the outcome of the suit under the governing law will

12   properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in

13   original).

14   In deciding a motion for summary judgment, the court draws all inferences and

15   views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at

16   587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a

17   whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

18   issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv.

19   Co.*, 391 U.S. 253, 289 (1968)).

20   A court may consider evidence as long as it is "admissible at trial." *Fraser v.

21   Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the

22   evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001)

23   (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the

24   burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir.

25   2002). If the opposing party objects to the proposed evidence, the party seeking admission must

26   direct the district court to "authenticating documents, deposition testimony bearing on attribution,

27   hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in

28   question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385-86

1    (9th Cir. 2010).  However, courts are sometimes "much more lenient" with the affidavits and

2    documents of the party opposing summary judgment.  *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240,

3    1243 (9th Cir. 1979).

4    III.  EVIDENTIARY MATTERS

5         A.  Request for Judicial Notice

6              Plaintiff has asked the court to take judicial notice of a number of documents from

7    *Swenson v. County of Siskiyou*, Siskiyou County Superior Court No. SCCVCV 05-222: the

8    decision issued May 15, 2007; the complaint for declaratory relief; the judgment filed July 20,

9    2007; the second amended complaint; the County of Siskiyou's demurrer; the opposition to the

10   demurrer; and the reply to the opposition to the demurrer.  Defendants do not object to the request

11   to take judicial notice of the Superior Court's order, the judgment, and the Second Amended

12   Complaint, as judicial notice was previously taken of these items.  ECF No. 182 at 2.  This

13   request is granted.  Fed. R. Evid. 201*; Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir.

14   2012) ("We may take judicial notice of undisputed matters of public record, including documents

15   on file in federal or state courts.") (internal quotations omitted).

16        B.  Plaintiff's Response to Defendants' Statement of Undisputed Facts

17             After the Ninth Circuit issued the mandate in this case, the then-assigned district

18   judge issued a scheduling order providing "all dispositive motions, not previously addressed by

19   this Court or the Ninth Circuit Court of appeals [*sic*] shall be filed by **April 9, 2014**."  ECF

20   No. 154 at 2 (emphasis in original).  Defendants filed their motion, relying chiefly on the

21   Statement of Undisputed Facts and the evidence filed in connection with their original motion

22   filed July 9, 2010.  *See* ECF Nos. 74-1 to 84.  Plaintiff opposed the motion and responded to

23   defendants' statement of undisputed facts.  ECF No. 181.  Defendants ask the court to strike this

24   response, arguing plaintiff is bound by his objection to the Statement of Undisputed Facts filed

25   October 4, 2010, ECF No. 110.  *See* ECF No. 182 at 1.  They argue plaintiff is attempting to

26   reopen summary judgment, on which the court was only partially reversed.  *Id.* at 2.

27             The renewed scheduling order, issued after the case was returned from the Ninth

28   Circuit, did not limit the parties to the factual statements submitted with the initial motion for

1    summary judgment.  Defendants' choice to rely on their previous submissions does not bind

2    plaintiff.  The court declines to strike plaintiff's response to defendants' statement of undisputed

3    facts.

4    IV.  UNDISPUTED FACTS

5            As noted, defendants have relied on the Statement of Undisputed Facts they

6    prepared in connection with the original motion for summary judgment.  The court does not

7    address facts related to issues foreclosed by the Ninth Circuit's order.

8            On August 3, 1966, C.O. Palmer applied for a use permit, listing the proposed uses

9    on two separate lines:  "install and operate an asphalt hot plant" and on the next line "to

10   manufacture aggregate + asphalt paving products."  Pl.'s Resp. to Defs.' Statement of Undisputed

11   Facts, ECF No. 181 ¶¶ 1, 5; Compl., Ex. 2; ECF No. 1 at 15.  The Siskiyou County Planning

12   Commission issued the Use Permit granting the application to "install and operate an asphalt hot

13   plant, as per his application."  *Id*.  Swenson and his wife Therese bought the 14.5 acre property in

14   September 1994.  ECF No. 181 ¶¶ 2-3; Dep. of Stanley Swenson 6:25-7:3.  Swenson has never

15   installed nor operated an asphalt hot plant, though there was one on the property in the 1980s.

16   ECF No. 181 ¶¶ 13, 15; Swenson Dep. at 25:8-26:8.  In 1995, Swenson requested the property be

17   zoned to an M-M Zone, Light Industrial.  ECF No. 181 ¶ 16; Swenson Dep. 24:19-25:1; Decl. of

18   Wendy Winningham & Exs. J & K.  This zoning designation remains in effect.  ECF No. 181

19   ¶ 59.7; Decl. of Greg Plucker, ECF No. 74-13 ¶ 4.

20           In 2000, Swenson permitted the County of Siskiyou (County) to undertake surface

21   mining on his property as part of the County's operations on its adjacent property.  ECF No. 181

22   ¶¶ 8, 11; Swenson Dep. at 14:15-15:2; Decl. of Scott Sumner ¶¶ 3-5, 8-9.  The County removed

23   approximately 4,860 tons of rock from Swenson's property and processed it in a crusher on

24   County property.  *Id*.  This project arose from the County's determination to reclaim its gravel pit

25   adjacent to Swenson's property.  ECF No. 181 ¶ 60; Sumner Decl. ¶¶ 3-5.

26           In 2002, plaintiff discovered the 1966 use permit.  Second Dep. of Stanley

27   Swenson at 7:19-8:5, ECF No. 178-1.  On December 10 and 12, 2002, Darrin Mercier, Swenson's

28   lawyer, wrote to Director of the Siskiyou County Planning Department advising that his clients

1   were moving forward with a business plan consistent with the use permit and asking for

2   notification of the basis for any claim that the operation would be unlawful.  ECF No. 181 ¶ 17;

3   Comp. ¶ 13 & Ex. 3; Decl. of Philip B. Price & Ex. U (Requests for Admission) ¶¶ 1 & 2.  Wayne

4   Virag responded to Mercier on February 13, 2003.  ECF No. 181 ¶ 24 & Compl., Ex. 4.  Virag

5   reviewed the history of the property, referred to as the Campbell Quarry and Hot Plant, noting

6   that the Board of Supervisors approved the closure of the quarry and the release of the

7   reclamation bond in 1993, and stating "[t]his action terminated any entitlement to conduct surface

8   mining operations on the site."  *Id.*, ECF No. 1 at 18.  Virag also noted that the property had not

9   been used for asphalt hot plant purposes for some time and, under Siskiyou County ordinances,

10  the failure to pursue such an operation, which had become a non-conforming use under the

11  zoning change, constituted an abandonment.  *Id.*

12          Mercier wrote to Virag, saying he believed there were no other administrative

13  remedies to exhaust and he was planning to seek judicial review of the validity of the use permit.

14  Compl., Ex. 5;  ECF No. 1 at 20.  Shortly thereafter, Mercier filed a declaratory relief action; after

15  several demurrers were sustained, the action proceeded as an administrative mandamus action.

16  ECF No. 181 ¶¶ 52, 54.

17          Although Virag had said "there was no clear avenue for administrative resolution,"

18  *id.*, Ex. 6; ECF No. 1 at 21, staff of the Planning Department initiated an appeal of Virag's letter

19  to the Planning Commission, sometime after the letter.  ECF No. 181 ¶ 46.[2]  After a public

20  hearing in May 2005, the Planning Commission approved the Virag letter of February 13, 2003.

21  ECF No. 181 ¶¶ 47, 90; Decl. of Don Langford, ECF No. 74-18 ¶¶ 2-3; Dep. of Wayne Virag at

22  18:5-9.  Jeff Fowle, Ron Stevens, Mike McMahon and Chris Lazaris, members of the Planning

23  Commission, heard this staff-initiated appeal.  ECF No. 181 ¶ 90; Decl. of Jeff Fowle ¶¶ 1-6;

24  Decl. of Ron Stevens ¶¶ 1-6; Decl. of Mike McMahon ¶¶ 1-6; Decl. of Chris Lazaris ¶¶ 1-6.

25  /////

26  _____

27          [2] Plaintiff disputes defendants' characterization that "Swenson's administrative remedies
    should be exhausted before legal action," but does not otherwise dispute the fact that planning
    staff initiated the appeal.  The court declines to find defendants' legal conclusion to be a proper
28  part of a statement of undisputed facts.

1        The Board of Supervisors upheld Virag's determination after a hearing.  ECF

2   No. 181 ¶¶ 49-50; Virag Dep. at 8:10-15; Swenson Dep. 33: 4-13.  Defendants LaVada Erickson,

3   Marcia Armstrong, Bill Hoy and Jim Cook were Supervisors of Siskiyou County and heard

4   Swenson's appeal from the Planning Commission's decision.  ECF No. 181 ¶ 72; Decl. of Marcia

5   Armstrong ¶¶ 4-10; Decl. of Jim Cook ¶¶ 4-10; Decl. of Bill Hoy ¶¶ 1-6; Decl. of LaVada

6   Erickson ¶¶ 1-6.

7        In May 2007, the Siskiyou County Superior Court ruled in plaintiff's favor in his

8   administrative mandamus action; judgment was entered in June.  ECF No. 181 ¶ 56; Swenson

9   Dep. 38:10-24, Exs. G & H.

10  V.  ANALYSIS

11       Defendants' motion for summary judgment contains a twenty-item outline, with

12  many sub-items as well, of the issues they believe remain for adjudication after the Ninth

13  Circuit's remand to this court.  ECF No. 174.  Their supporting memorandum of points and

14  authorities does not track their list of issues nor does it address each of the twenty-plus points

15  raised in the motion itself.  Defendants argue broadly that claim two, which the presiding courts

16  have interpreted as alleging the procedural and substantive due process claims against the

17  individual defendants, did not survive the magistrate judge's findings and recommendations, the

18  district court order and the Ninth Circuit's order; that in any event, the individual defendants are

19  entitled to qualified immunity; the defendants are entitled to summary adjudication of the

20  procedural due process issue because Virag's letter was an opinion, not a decision on plaintiff's

21  vested right; to the extent there is a disputed issue of fact on the substantive due process issue, it

22  relates only to plaintiff's right to operate an asphalt hot plant, not to conduct surface mining;

23  plaintiff has not established the County's liability under a *Monell* theory; and the entire action is

24  barred by the statute of limitations.

25       Plaintiff counters that several of defendants' issues may not be relitigated as they

26  were addressed in the Ninth Circuit's order; that the procedural due process issue was resolved by

27  the Siskiyou County Superior Court, an order with preclusive effect; and that plaintiff's vested

28  rights under the use permit include the right to conduct surface mining.

1    At the hearing on the motion, the parties clarified there are two issues before this

2    court:  a substantive due process issue based on interference with plaintiff's vested property right

3    and a procedural due process claim arising from the entire hearing process.

4    A.  Law of the Case

5    "'Under the 'law of the case' doctrine, a court is ordinarily precluded from

6    reexamining an issue previously decided by the same court, or a higher court, in the same case.'"

7    *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012) (quoting *Richardson v. United States*,

8    841 F.2d 993, 996 (9th Cir. 1988)).  Although the doctrine does not apply to "issues or claims that

9    were not actually decided," *Mortimer v. Baca*, 594 F.3d 714, 720 (9th Cir. 2010), it applies to

10   issues actually decided, "explicitly or by necessary implication."  *Snow-Erlin v. United States*,

11   470 F.3d 804, 807 (9th Cir. 2006).  "A prior ruling need not be expressly made, or discussed in

12   any detail to serve as law of the case; decisions that are implicit, or terse, will suffice."

13   *Garamendi v. Altus Fin. S.A.*, 282 F.R.D. 270, 273 (C.D. Cal. 2012) (citing *Bernhardt v. Los*

14   *Angeles Cnty.*, 339 F.3d 920, 924 (9th Cir. 2003).  In evaluating whether a court has decided an

15   issue by necessary implication, the court may consider the parties' briefing.  *Snow-Erlin*, 470

16   F.3d at 807.

17   There are three exceptions to the doctrine:  "(1) the decision is clearly erroneous

18   and its enforcement would work a manifest injustice, (2) intervening controlling authority makes

19   reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent

20   trial."  *Mortimer*, 594 F.3d at 721.  Defendants have not argued any of the exceptions apply:

21   there is no suggestion in their motion that the Ninth Circuit's order has been undermined by a

22   change in the law or that it is clearly erroneous.  In addition, they have relied on the evidentiary

23   record before this court in 2010 and the Ninth Circuit thereafter and so have not shown

24   substantially different evidence undercuts the Ninth Circuit's ruling.  Accordingly, this court

25   considers the application of the law of the case doctrine to the issues raised here.

26   1.  The Statute of Limitations

27   Defendants argue the entire action is barred by the statute of limitations as

28   plaintiff's claims accrued at the latest in 2005, when the Board of Supervisors approved Virag's

11

1   letter. ECF No. 174-1 at 15. Plaintiff says this argument is foreclosed by law of the case. ECF

2   No. 180 at 18-20.

3          Defendants' opposition brief filed in the Ninth Circuit made the same arguments

4   they are raising here. *Compare* Appellate Docket, ECF No. 7 at 60-64 ("The Board of

5   Supervisors' hearing, and their denial of the appeal thereby upholding the opinion of the Assistant

6   Planning Director, occurred on May 24, 2005. . . . There is no other or later act of Siskiyou

7   County alleged in the Complaint. All of this was more than 3 years prior to the filing of the

8   Complaint . . . .") *with* ECF No. 174-1 at 15 ("The Board of Supervisors' hearing, and their denial

9   of the appeal thereby upholding the opinion of the Assistant Planning Director, occurred on

10  May 24, 2005. . . . There is no other or later act of Siskiyou County alleged in the Complaint. All

11  of this was more than 3 years prior to the filing of the Complaint . . . .").

12          It is true the Ninth Circuit did not explicitly address the statute of limitations

13  argument, but it nevertheless found a disputed issue of fact on the substantive due process issue

14  and reversed the dismissal of the procedural due process issue. Had the Court of Appeals agreed

15  with defendants' statute of limitations argument, it would not have addressed the merits of these

16  two claims. Accordingly, the issue was necessarily decided by implication and cannot be

17  addressed through this motion.

18          2. Claim Two

19          Defendants contend the effect of the magistrate judge's findings and

20  recommendations, ECF No. 27, and the district court's order, ECF No. 32, is that plaintiff's

21  second claim against the individual defendants was dismissed, a determination not reversed by

22  the Ninth Circuit. ECF No. 174-1 at 15. They ask for "a definitive order dismissing the Second

23  Claim." *Id*. at 16. Plaintiff responds that this argument also is foreclosed by the Ninth Circuit's

24  order. ECF No. 180 at 26-27.

25  /////

26  /////

27  /////

28  /////

12

1        The Ninth Circuit reversed two of the district court's determinations:

2        [D]ismissal of Swenson's procedural due process claim was
         improper because Swenson did not allege a random and
3        unauthorized deprivation of property.  Rather Swenson alleged that
         *defendants* deprived him of a vested property interest under
4        established state procedures, which made it possible for *them* to
         both foresee the deprivation and provide pre-deprivation due
5        process.

6        Summary judgment on Swenson's substantive due process claim
         was also improper because, viewing the evidence most favorably to
7        Swenson, he raised a genuine dispute of material fact as to whether
         the *defendants* acted in an arbitrary and irrational manner when *they*
8
         invalidated a vested property interest due to political or other
9        considerations.

10   ECF No. 139 at 3-4 (citations omitted; emphases added).  The Ninth Circuit thus necessarily

11   decided that claim two against the individual defendants survived.

12        The individual defendants also argue they are entitled to immunity, an argument

13   addressed below.

14        3.  Substantive Due Process

15        Defendants assert plaintiff did not have a vested right to install and operate an

16   asphalt hot plant and, even if he did, Virag's letter did not arbitrarily and irrationally deprive

17   plaintiff of a vested right.  ECF No. 174 at 2, 17-23.  Plaintiff does not specifically raise law of

18   the case, but argues relitigation of this issue is precluded by the Siskiyou County Superior Court's

19   order.

20        As noted above, the Ninth Circuit explicitly said plaintiff had raised an issue of

21   disputed fact whether defendants acted arbitrarily in invalidating his vested property interest.

22   ECF No. 139 at 4.  Defendants have presented no additional evidence on the question and so

23   cannot rely on any of the exceptions to the law of the case doctrine.   Accordingly, defendants

24   cannot now argue they have demonstrated the absence of an issue of fact on the question of

25   plaintiff's vested property right.  However, plaintiff has presented the superior court's order,

26   which was mentioned only obliquely in the Ninth Circuit briefing.  Plaintiffs argue that the

27   court's finding that plaintiff has a vested right under the use permit is entitled to preclusive effect.

28   ECF No. 180 at 13-16 ("Defendants are thus precluded from seeking a determination as to

1  whether or not Mr. Swenson has a vested property right, as it has already been decided.")

2  (footnote omitted).

3          The Ninth Circuit said that plaintiff had "raised a genuine dispute of material fact

4  as to whether the defendants acted in an arbitrary and irrational manner when they invalidated a

5  vested property interest due to political or other considerations." ECF No. 139 at 4.  This phrase

6  is not the clearest:  does it mean there is a disputed issue of fact as to both the arbitrary and

7  irrational nature of the Virag letter and the vested nature of plaintiff's right, or just a dispute as to

8  the arbitrary and irrational nature of the letter?  This court interprets it as a ruling that there are

9  disputed issues as to both.  Accordingly, the Ninth Circuit explicitly considered whether plaintiff

10  had raised an issue of disputed fact on the arbitrary nature of the Virag letter and on the question

11  of plaintiff's vested right; this court cannot now resolve the issue in defendants' favor on this

12  motion.  The parties do present differing views on the scope of the use permit, an issue discussed

13  below.

14          B.  Issue Preclusion

15          Plaintiff argues that the Siskiyou County Superior Court has already decided he

16  has vested rights, a determination entitled to preclusive effect in this case.  However, plaintiff has

17  raised this issue only in opposition to defendants' motion for summary judgment rather than

18  seeking a ruling in a separate motion.  As noted, the Ninth Circuit found there were disputed

19  issues of fact on the issue.  Had plaintiff sought a different determination based on an expanded

20  record, it was his obligation to seek a ruling on the question.  The court will not consider this

21  argument.  Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.");

22  *Mortensen v. Nevens*, No. 2:10–cv–02263–KJD, 2011 WL 772885, at *1 (D. Nev. Feb. 25, 2011)

23  (citing the rule, stating that a request for a court order must be made by motion).

24          C.  The Scope of the Vested Right

25          The use permit at issue is a typed application for the permit, filled in by hand, and

26  approved by the Siskiyou County Planning Commission.  ECF No. 1 at 15.  Palmer sought a use

27  permit to "install and operate an asphalt hot plant."  This is followed on the next line, not

28  separated by punctuation, by a request "to manufacture aggregate & asphalt paving products[.]"

1   The Commission "granted a Use Permit to C.O. Palmer, Jr. to install and operate an Asphalt Hot

2   Plant, as per his application." *Id.*

3          Plaintiff argues that in addition to a vested right to operate an asphalt batch plant

4   on his property, the use permit included a right to conduct surface mining. ECF No. 26. He has

5   presented evidence from Greg Plucker, the former Deputy Director of Planning for the County,

6   who says that manufacturing asphalt might include surface mining to get the raw material. Decl.

7   of Therese Cannata, Ex. 5, Dep. of Greg Plucker, ECF No. 178-1 at 22:8-20. He has also

8   presented testimony from Jeff Fowle, who said that one "could use a surface quarry to

9   manufacture aggregate." Cannata Decl., Ex. 1, Dep. of Jeffrey Fowle, ECF No. 178-1, at

10  4:18-20.

11         Defendants argue the interpretation of the permit is a question of law and that the

12  language of the permit cannot be read broadly to encompass surface mining. ECF No. 174-1 at

13  14. At hearing, plaintiff argued this is a question of fact, but has cited nothing other than the

14  permit itself in support of this argument. Neither side has cited any law on the interpretation of a

15  vague or ambiguous permit.

16         "[R]ights which may 'vest' through reliance on a government permit are no greater

17  than those specifically granted by the permit itself." *Santa Monica Pines, Ltd. v. Rent Control*

18  *Bd. of Santa Monica,* 35 Cal.3d 858, 866 (1984). Interpretation of a written instrument is a

19  question of law unless interpretation turns on the credibility of extrinsic evidence. *Fireman's*

20  *Fund Ins. Co. v. Workers' Comp. Appeals Bd.*, 189 Cal. App. 4th 101, 110 (2010) (interpreting

21  insurance contracts). An "instrument" is a "written legal document that defines rights, duties,

22  entitlements, or liabilities" and embraces "'any written or printed document that may have to be

23  interpreted by the Courts.'" Black's Law Dictionary (9th ed. 2009) (quoting Edwin Beal,

24  *Cardinal Rules of Legal Interpretation* 55 (A.E. Randall ed., 3d ed. 1924)). A use permit is a

25  license, defining the holder's entitlement to undertake certain activities. *Id.* (defining "permit" as

26  "A certificate evidencing permission; a license"). As plaintiff has not suggested his interpretation

27  turns on the credibility of extrinsic evidence, the interpretation of the use permit is for the court.

28  /////

15

1    The Planning Commission gave Palmer permission to "install and operate an

2    Asphalt Hot Plant as per his application." ECF No. 174-1 at 15. Although it did not expressly

3    incorporate language regarding the manufacture of aggregate, it referenced Palmer's application,

4    which had included such a request. Moreover, plaintiff has presented evidence that there is a

5    relationship between surface mining and the manufacture of asphalt. *See also Road Science, LLC*

6    *v. Telfer Oil Co*., No. CIV S–10–0786 KJM GGH, 2012 WL 1739817, at *7 (E.D. Cal. May 15,

7    2012) (noting the connection between aggregate and asphalt). Here, the permit's use of the

8    shorthand phrase "as per," in other words "in accordance with," the application, can be read to

9    include authorization to manufacture aggregate. Black's Law Dictionary (9th ed. 2009).

10   Because the evidence is disputed as to what Palmer was requesting, and thus what the permit

11   granted, the court declines to grant summary judgment. Even though the scope of the permit

12   appears to be a question of law, a jury can render a special verdict on the factual questions

13   surrounding the parties' intentions, and the court anticipates eliciting such a special verdict at

14   trial.

15       D.  Procedural Due Process

16       The parties do not dispute that "an adjudicative governmental action that

17   implicates a significant or substantial property deprivation generally requires the procedural due

18   process standards of reasonable notice and opportunity to be heard." *Calvert v. Cnty. of Yuba*.,

19   145 Cal. App. 4th 613, 622 (2007); *see Tri Cnty. Paving, Inc. v. Ashe Cnty*., 281 F.3d 430, 436

20   (4th Cir. 2002) (procedural due process claim has three elements: (1) a property interest;

21   (2) deprivation of that interest by the government; and (3) without due process of law, which

22   generally means without prior notice and opportunity for hearing).

23       They disagree whether Virag's letter addressed the validity of the use permit, such

24   that it should have been preceded by notice and an opportunity to be heard. Defendants argue the

25   letter made no factual determinations, but rather was only an opinion. They also argue plaintiff

26   received procedural due process at the subsequent proceedings before the Planning Commission

27   and the Board of Supervisors. ECF No. 174-1 at 23. Plaintiff argues the entire course of

28   proceedings in the County, beginning with the Virag letter and continuing through the hearing

16

1   before the Board of Supervisors, are part of his procedural due process claims.  At hearing,

2   plaintiff emphasized things he characterized as procedural irregularities:  he did not appeal

3   Virag's letter, but two years later, County personnel pursued an appeal, pushing it through the

4   various County levels before the superior court acted on his pending administrative mandamus

5   proceedings.  The court need not examine the entire course of proceedings, as it concludes there

6   are disputed issues about the impact of Virag's letter which, coupled with the admitted lack of an

7   opportunity to be heard, preclude summary judgment on the procedural due process issue as

8   framed by defendants in their motion.

9          Virag's letter responds to plaintiff's claim that "the entitlements for the quarry

10  and/or batch plant remain valid absent affirmative action by the County . . . ." and provides a

11  "rationale for [his] determination" that plaintiff no longer had such an entitlement.  He concluded

12  that in light of a zoning change, the operation of an asphalt plant on the site was a non-

13  conforming use, which could be and was extinguished because it was discontinued.  ECF No. 1 at

14  18-19.  Virag explains his "conclusions" and the rationale for his "determination" that any use

15  authorized by the permit had been "extinguished."  ECF No. 178-1 at 28.  In addition, the later

16  administrative proceedings before the Board of Supervisors were denominated "[p]ublic hearing

17  to consider an appeal of the Planning Commission's decision to uphold the Planning Director's

18  administrative decision regarding the status of a Use Permit . . . ."  Decl. of Wendy Winningham,

19  Ex. 2, ECF No. 174-2 at 6.  Virag's language and the parties' recognition of the letter as a

20  decision defeats defendants' argument.

21          E.  Immunity and the Individual Defendants

22              1.  Absolute Immunity

23          Defendants argue they are absolutely immune because they were acting in a quasi-

24  judicial capacity while hearing the appeals of Virag's letters.  ECF No. 174-1 at 25-26.  Plaintiffs

25  contend defendants have not borne their burden of demonstrating their entitlement to immunity.

26          The party seeking absolute immunity bears the burden of showing his entitlement

27  to such protection.  *Antoine v. Byers & Anderson, Inc*., 508 U.S. 429, 432 (1993).  "Quasi-judicial

28  immunity is extended to nonjudicial officers only where they 'perform official duties that are

17

1  functionally comparable to those of judges, *i.e.*, duties that involve the exercise of discretion in

2  resolving disputes." *Id*. at 433 n.8; *see also Mischler v. Clift*, 191 F.3d 998, 1002 (9th Cir. 1999).

3  The Ninth Circuit has identified six factors for a court to consider in determining whether a

4  particular defendant is entitled to quasi-judicial immunity:  (1) the need to assure that the

5  individual can perform his functions without harassment or intimidation; (2) the presence of

6  safeguards that reduce the need for lawsuits as a means of controlling unconstitutional conduct;

7  (3) insulation from political influence; (4) the importance of precedent; (5) the adversary nature

8  of the process; and (6) the correctability of the error on appeal.  *Buckwalter v. Nev. Bd. of Med.*

9  *Examiners*, 678 F.3d 737, 740 (9th Cir. 2012).

10          California courts have said that "[i]n determining that a permit, validly issued,

11  should be revoked, the governing body of a municipality acts in a quasi-judicial capacity."

12  *Korean-American Legal Advocacy Found. v. City of Los Angeles*, 23 Cal. App. 4th 376, 393 n.5

13  (1994) (internal quotation & citation omitted).  The court, however, was not considering an

14  immunity issue such as presented here, but rather was defining the due process rights attaching to

15  any revocation proceedings.  *See Trans-Oceanic Oil Corp. v. City of Santa Barbara*, 85 Cal. App.

16  2d. 776, 795 (1948).

17          Defendants have neither acknowledged nor addressed the Ninth Circuit's factors;

18  the court declines to undertake the analysis they should have undertaken in the first instance.

19  Moreover, in light of the Ninth Circuit's determination there is a disputed issue of fact on the

20  question of whether actions were taken because of improper influences, it is unlikely they could

21  succeed on this claim.  *See G & H Dev, LLC v. Penwell*, 9 F. Supp. 2d 658, 668 (W.D. La. 2014)

22  (allegations Planning Commission was politically motivated suggested members were not

23  insulated from harassment or intimidation and were not insulated from political influence).  They

24  have not borne their burden of showing entitlement to quasi-judicial immunity.

25          2.  Qualified Immunity

26          Government officials performing discretionary functions generally are shielded

27  from liability for civil damages insofar as their conduct does not violate clearly established

28  statutory or constitutional rights of which a reasonable person would have known.  *Harlow v.*

18

1    *Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant raises qualified immunity, "a ruling on

2    that issue should be made early in the proceedings. . . ." *Saucier v. Katz*, 533 U.S. 194, 200, 121

3    S.Ct. 2151 (2001), *overruled in part on other grounds*, *Pearson v. Callahan*, 555 U.S. 223

4    (2009).   In making the ruling, the court resolves all factual issues in favor of the plaintiff.  *Id*. at

5    201.

6              In determining whether a governmental officer is immune from suit based on the

7    doctrine of qualified immunity, the court generally considers two questions. The district court

8    may decide the order of addressing these questions and answer only the second, in accordance

9    with fairness and efficiency and in light of the circumstances of a particular case.  *Pearson*,

10   555 U.S. at 236. The first, taken in the light most favorable to the party asserting the injury, is do

11   the facts alleged show the officer's conduct violated a constitutional right?  *Saucier*, 533 U.S. at

12   201.  A negative answer ends the analysis, with qualified immunity protecting defendant from

13   liability.  *Id*.   If a constitutional violation occurred, a court also inquires "whether the right was

14   clearly established."  *Id*.  "If the law did not put the [defendant] on notice that [his] conduct

15   would be clearly unlawful, summary judgment based on qualified immunity is appropriate."  *Id*.

16   at 202.  A right is clearly established if "the state of law at the time gives officials fair warning

17   that their conduct is unconstitutional."  *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1065 (9th

18   Cir. 2013).  The Supreme Court has emphasized that "the qualified immunity inquiry must be

19   undertaken in light of the specific context of the case."  *Brosseau v. Haugen*, 543 U.S. 194, 198

20   (2004).

21            As noted, there are disputed issues of fact on plaintiff's procedural and substantive

22   due process rights.  Moreover, it is settled law that a deprivation of a property interest must be

23   preceded by notice and a reasonable opportunity to be heard, *Goss v. Lopez*, 419 U.S. 565, 577-79

24   (1975), and that deprivation of a property right for improper purposes violates substantive due

25   process.  *Del Monte Dunes v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir. 1990).

26   Defendants are not entitled to qualified immunity.

27   /////

28   /////

1   F.  *Monell* and the County Defendants

2          "[A] local government may not be sued under § 1983 for an injury inflicted solely

3   by its employees or agents.  Instead, it is when execution of a government's policy or custom . . .

4   inflicts the injury that the government as an entity is responsible under § 1983."  *Monell v. Dep't*

5   *of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To establish municipal liability under *Monell*, a

6   plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was

7   deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate

8   indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force

9   behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir.

10  2011) (internal quotation marks omitted), *cert. denied*. 133 S.Ct. 1725 (2013).  "Official . . .

11  policy includes the decisions of a government's lawmakers, the acts of its policymaking officials,

12  and practices so persistent and widespread as to practically have the force of law." *Connick v.*

13  *Thompson*, __U.S. __, 131 S. Ct. 1350, 1359 (2011) (citations omitted).  *Monell* liability may

14  stem from an action taken "by the official or officials responsible for establishing final policy

15  with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483

16  (1986).  Accordingly, "a municipality may be held liable under § 1983 for a single decision by its

17  properly constituted legislative body." *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988).

18  Furthermore, "if authorized policymakers approve a subordinate's decision and the basis for it,"

19  the actions of a non-policymaker may constitute an official policy as a result of the ratification.

20  *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004); *Frary v. Cnty. of Marin*, No. C 12–3928 MEJ,

21  2012 WL 6218196, at *9 (N.D. Cal. Dec. 13, 2012).

22          Disputed issues of fact preclude summary judgment on the question of *Monell*

23  liability:  evidence in the record shows the County, through the Planning Commission and the

24  Board of Supervisors, endorsed Virag's letter and its issuance even though it was issued without

25  providing an opportunity for plaintiff to weigh in.  Defendants are not entitled to summary

26  judgment.

27  /////

28  /////

G.  Election of Remedies

Defendants make a single-sentence argument that plaintiff is barred from seeking damages by the doctrine of election of remedies.  This is insufficient to warrant the court's attention.  *Cyntegra, Inc. v. IDEXX Labs., Inc.*, 322 F. App'x. 569, 572 (9th Cir. 2009) (refusing to consider an argument raised in a single conclusory sentence).

IT IS THEREFORE ORDERED that defendants' motion for summary judgment is DENIED.

DATED:  November 14, 2014.

_____
UNITED STATES DISTRICT JUDGE